HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

In Re:
WILLIAM MARSHALL WELDON and
SUZANNE LOREE WELDON,

        Debtors.

WILLIAM M WELDON and SUZANNE L WELDON,

        Appellants,

v.

SALLIE MAE, INC.,

        Appellee.

Case No. C08-5665 RBL

Bankr. No. 03-49320

Adv. No. 07-04151

ORDER AFFIRMING BANKRUPTCY COURT'S ORDER DENYING DISCHARGE.

    William and Suzanne Weldon appeal a bankruptcy court's order holding that the student debt the Weldons owe defendant Sallie Mae is nondischargeable. The Court has reviewed the record, and for the reasons stated herein the bankruptcy court's decision is AFFIRMED.

**Facts and Procedural History**

    The defendant, Sallie Mae, Inc., provided an education loan to William Weldon. The loan had an initial disbursement date of January 16, 2001, and a variable interest rate of 7 percent. William and

ORDER
Page - 1

Suzanne Weldon, plaintiffs/debtors, filed a Chapter 7 bankruptcy petition and ultimately received a discharge on December 24, 2003. On August 27, 2007, the Weldons reopened their bankruptcy case, seeking to have the debt they owe defendant Sallie Mae discharged pursuant to 11 U.S.C. § 523(a)(8).

As of September 5, 2008, the principal balance of the loan was $84,407.53, with accrued interest of $9,919.90. Loan payments are $723.23 per month, and in June 2009 the required monthly payments will increase to $992.86. Between 2005 and July 2007, William Weldon made nine payments on the loan. These payments ranged between $145.35 and $750.00.

Mr. Weldon is forty-three years old, married, and has three school-aged children. He is also highly educated: he has an associate degree in business administration, a Bachelor of Science degree in political science, and has completed one year towards a master's degree in political science. In 2001, he obtained a diploma in Applied Information Technology.

For the past five years, Mr. Weldon has been employed as a software engineer. His salary as of the date of the trial was $53,000. Mr. Weldon received a 6 percent pay raise in both 2006 and 2007. His salary has been augmented by a $10,000 bonus in October 2006 and a $1,000 bonus four months later. Between 2001 and 2007, Mr. Weldon supplemented his income by working as a freelance programmer, earning as much as $13,000 of additional income in a one-year period.

Mrs. Weldon does not have a college degree. She has not been employed outside the home since January 2006, when she was laid off from her position as a junior loan processor. In the past, she has been employed in secretarial positions. When employed over the past decade, her annual income has fluctuated between $12,879 and $20,194. Most recently, in 2005, she earned $18,427. She is not disabled or restricted from working, although she testified that she experiences pain after prolonged periods of sitting or standing. She home schools two of her three children, and testified that she believed that the cost of child care would almost completely offset her income were she employed as a secretary.

As of August 2008, the Weldons had a monthly net income of $3,419 and claimed expenses of $3,387. These expenses include high speed internet service, which they allege is necessary for the children's education, a music download service, and fitness center membership. Mr. Weldon also has pre-tax deductions from his paycheck for health insurance, medical savings account contributions, long-term disability insurance, life insurance, and 401K contributions.

After trial, the bankruptcy court held that the Weldons' student debt was nondischargeable. Relying on the three-pronged test set forth in *In re Brunner*, 831 F.2d 395, 396 (2d Cir. 1987), the bankruptcy court found that the Weldons did not meet their burden of proving that repayment would pose an undue burden, and that a discharge was therefore unavailable. The Weldons appeal this decision, and argue that the bankruptcy court committed factual and legal errors in its application of *Brunner*.

**Standard of Review**

On appeal, the district court reviews the bankruptcy court's factual findings for clear error and its legal conclusions *de novo*. *In re First T.D. & Inv., Inc.*, 253 F.3d 520, 526 (9th Cir. 2001).

**Discussion**

Under 11 U.S.C. § 523(a)(8)(A), bankruptcy courts may not discharge educational loan debts unless failure to discharge imposes an "undue hardship" on the debtor. The statute does not define "undue hardship," but the Ninth Circuit has adopted the *Brunner* three-pronged test first articulated by the Second Circuit. *Pena v. United Student Aid Funds, Inc.*, 155 F.3d 1108, 1112 (9th Cir. 1998) (adopting the test described in *In re Brunner*, 831 F.2d 395, 396 (2d Cir. 1987)). The test requires that the debtor establish all of the following:

> (1) the debtor cannot maintain, based on current income and expenses, a minimal standard of living for [the debtor] and [any] dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loans.

*Brunner*, 831 F.2d at 396.

A discharge is impermissible unless a debtor proves all three elements of *Brunner*. "If the debtor fails to satisfy any one of these requirements, 'the bankruptcy court's inquiry must end there, with a finding of no dischargeability.'" *In re Rifino*, 245 F.3d 1083, 1087-88 (9th Cir. 2001) (citing *In re Faish*, 72 F.3d 298, 306 (3d Cir. 1995). The bankruptcy court concluded that the Weldons failed to prove, by a preponderance of the evidence, that payment of the loan would impose an undue hardship. The bankruptcy court found that the Weldons failed to establish all three elements of the *Brunner* test.

## Applying *Brunner*

### A. *First Prong: Whether the Debtor can Maintain a Minimal Standard of Living while Repaying Loan, Based on Current Income and Expenses.*

The bankruptcy court found that the Weldons failed to establish that, based on their current income and expenses, they could not repay the loan while maintaining a minimal standard of living. The Weldons argue that the court clearly erred in applying the first element of *Brunner* because loan payments would equal about one-third of their monthly income and they therefore would be unable to maintain a minimal standard of living and also make the required monthly payments.

The bankruptcy court correctly noted that to satisfy the first prong of *Brunner*, the debtor must show more than tight finances. Instead, the first prong will only be satisfied when it would be "unconscionable" to require the debtor to increase his income or decrease expenses. *In re Birrane*, 287 B.R. 490, 495 (9th Cir. BAP 2002) (quoting *In re Nascimento*, 241 B.R. 440, 445 (9th Cir. BAP 1999)).

The bankruptcy court found that the Weldons could cut unnecessary expenses, increase their income, and repay the loan while maintaining a minimal standard of living. The court suggested possible actions to help with repayment: cease voluntary contributions to their retirement plan, reduce insurance, cancel the fitness center membership and music download service, and have Mrs. Weldon seek employment on even a part-time basis. Although Mrs. Weldon alleged that childcare would offset any earnings, she based her opinion on childcare costs she paid several years ago while working full-time.

The bankruptcy court found that she did not consider the possibility of forestalling childcare costs altogether by pursuing work on weekends or evenings when her husband is available to tend to the children. Also, because her children are now school-aged, weekday childcare costs would presumably be less than the full-time care she paid for several years ago before her youngest was old enough to attend public school. Based on the record, these findings are not clear error. The Weldons did not produce evidence showing that pursuing any of the courses the bankruptcy court recommended would be unconscionable, or that they would still be unable to repay the loan and maintain a minimal standard of living. Therefore, the bankruptcy court correctly concluded that the Weldons failed to establish that they met the first prong of *Brunner*.

**B.** *Second Prong: Whether there Exist Additional Circumstances Suggesting that* **the** *Debtor Will be Unable to Maintain a Minimal Standard of Living for a Significant Portion of the Loan Repayment Period.*

The Weldons argue that the bankruptcy court incorrectly applied the second prong of *Brunner* when it found that the Weldons, if required to pay the debt owed Defendant, would still be able to maintain a minimal standard of living during most of the repayment period. The bankruptcy court found that Mr. Weldon's salary was expected to increase, and that family expenses would decrease after their bankruptcy attorney was paid, allowing the Weldons to repay the loan and maintain a minimal standard of living. Based on the record, these findings are not clear error, and the Weldons failed to meet their burden in establishing the second element of *Brunner*.

**C.** *Third Prong: Whether the Debtor Has Made Good-Faith Efforts to Repay the Loan.*

The Weldons contend that the bankruptcy court committed error when it concluded that the Weldons had not made good-faith efforts to repay the loans. Courts measure good faith by looking to the debtor's efforts "to obtain employment, maximize income, and minimize expenses." *In re Roberson*, 999 F.2d 1132, 1136 (7th Cir. 1993).

The bankruptcy court found that Mrs. Weldon had not made efforts to find employment. The

bankruptcy court also found that the Weldon's previous payments on the loan were minimal in light of Mr. Weldon's significant bonuses and freelance income. The bankruptcy court's findings are not clear error, and the bankruptcy court correctly concluded that the Weldons did not establish that they had made good-faith efforts to repay the loan.

**Conclusion**

The bankruptcy court correctly found that the Weldons did not prove any of the three elements in the *Brunner* test, and therefore correctly concluded that requiring repayment would not pose an undue hardship. Failing to establish even one of the *Brunner* elements precludes a discharge, and the Weldons failed to establish all three. The bankruptcy court's factual findings were not clearly erroneous, and the bankruptcy court correctly applied the law. Since the bankruptcy court did not err in holding that requiring loan repayment would not place an undue hardship on the Weldons, this Court must affirm.

The Bankruptcy Court's decision denying discharge of the Weldons discharge from their student loan debt is **AFFIRMED.**

Dated this 16th day of April, 2009.

_____
RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE